UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| ROBERTA BALTER, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | 2:05-cv-1080-PMP-PAL |
| RBC DAIN RAUSCHER, INC., | ) ) | O R D E R |
| Respondent. | ) ) | |

      Presently before this Court is Petitioner Roberta Balter's Motion to Vacate Arbitration Award (Doc. #1) and Memorandum of Points and Authorities in Support of Motion to Vacate (Doc. #2), filed on September 2, 2005.  Respondent RBC Dain Rauscher, Inc. filed Respondent's Opposition to Motion to Vacate Arbitration Award (Doc. #3) and a Cross-Motion to Confirm NASD Arbitration Award (Doc. #4) with the supporting Declaration of Michael M. Gless (Doc. #5) on October 14, 2005.  Petitioner filed several errata to her motion to vacate (Doc. ##6, 16, 19, 20) as well as her own supporting affidavit (Doc. #14).  Petitioner also filed a joint Reply on the motion to vacate and Opposition to Respondent's cross-motion (Doc. #12) on November 15, 2005.  Respondent filed a Reply to the cross-motion (Doc. #17) on November 23, 2005.  Respondent also filed Supplemental Authority in Support of Motion to Confirm Arbitration Award and in Opposition to Petitioner's Motion to Vacate Arbitration Award (Doc. #26) on March 8, 2006.

///

///

**I.     BACKGROUND**

The parties cross-move to vacate or confirm an arbitration award from a National Association of Securities Dealers ("NASD") arbitration panel.  The panel awarded Petitioner Roberta Balter ("Balter") $62,500 arising out of Respondent RBC Dain Rauscher, Inc.'s ("RBC") handling of Balter's brokerage account.  (Mot. to Vacate Arbitration Award [Doc. #1], Ex. V.)

Balter and her husband, Jack Balter, maintained a brokerage account with Respondent RBC.  (Mot. to Vacate Arbitration Award, Ex. B at 27.)  While Mr. Balter was alive, he handled the accounts, making all the decisions related to the accounts and conducting all communications with the financial advisors.  (Mot. to Vacate Arbitration Award, Ex. A at 54-57, 111, 125.)

After Mr. Balter passed away, Roberta Balter maintained her account with RBC.  (Mot. to Vacate Arbitration Award, Ex. B at 29.)  Balter had a high school education and previously had not managed the investments.  (Affirmation of Roberta Balter in Supp. of Pet'r's Application to Vacate the Arbitral Award and in Opp'n to Resp.'s Mot. to Confirm the Arbitration Award ("Balter Affirmation") [Doc. #14] at 20.)  She did not understand the financial statements being sent to her, and often did not open or read the account statements RBC mailed to her.  (Mot. to Vacate Arbitration Award, Ex. A at 42-44, 53, 116.)  Balter's account executive at RBC, James Halverson ("Halverson"), went to Balter's home each month with a summary of account information to assist Balter in understanding her financial position.  (Mot. to Vacate Arbitration Award, Ex. A at 18, 47-49; Ex. B at 29-31.)

Balter believed her account was in a low-risk position focused on providing her income for the remainder of her life, rather than in an aggressive growth position.  (Mot. to Vacate Arbitration Award, Ex. A at 39-42, 54, 123-24.)  However, documents related to Balter's account indicated growth was listed as an investment goal, and her account contained stock, including the stock of a company known as Purchase Pro.  (Id. at 66; Mot.

1  to Vacate Arbitration Award, Ex. B at 41-43, Errata to Mem. of P.&A. in Supp. of Mot. to
2  Vacate ("Errata") [Doc. #6], Ex. C.)  Purchase Pro stock subsequently lost substantial value
3  after it became public knowledge that Purchase Pro executives had falsified financial data
4  relating to the company.  (Mot. to Vacate Arbitration Award, Ex. A at 134-35, Ex. B at 45,
5  Balter Affirmation, Ex. X.)

6  During the time Balter maintained her account at RBC, Halverson had an alcohol
7  problem and left the office for thirty days for rehabilitation.  (Mot. to Vacate Arbitration
8  Award, Ex. B at 25.)  During his absence, his assistant Michelle Collins, and fellow RBC
9  employees, Rick Hollander and John McDonough, were available to answer any questions
10  for customers Halverson normally serviced.  (Id. at 26.)

11  Balter did not become concerned about her account's status until she received
12  two checks in the mail from one of her annuities.  (Mot. to Vacate Arbitration Award, Ex. A
13  at 32.)  She called Halverson to discuss why she was getting the checks and what she should
14  do with them.  (Id. at 4-5.)  Halverson informed her that she should endorse the checks and
15  he would come to her house to pick them up.  (Id. at 5.)  Balter advised Halverson she was
16  not going to give him the checks and she did not want him to come to her house.  (Id. at 5-
17  6.)  Halverson came to Balter's house anyway, and demanded she turn over the checks to
18  him.  (Id. at 6.)  According to Balter, when she refused to give Halverson the checks,
19  Halverson became threatening, yelling at her and looking as if he was about to strike her.
20  (Id.)  Halverson left without the checks.  (Id.)

21  Balter subsequently sent a letter to RBC advising them that she did not
22  understand what was happening with her accounts and advising them to cease any activity
23  in the accounts until otherwise notified.  (Id. at 7, 13-13, 34-35, 100-01.)  In response, RBC
24  sent its branch manager, Rick Hollander, to discuss Balter's accounts with her.  (Id. at 14-
25  15, 74-75.)  Balter subsequently moved her account from RBC to Merrill Lynch.  (Id. at
26  16.)

Balter initiated arbitration proceedings with the NASD, naming RBC as respondent, and asserting RBC placed Balter's investments in growth positions inappropriate for a person of her age and financial position. (Decl. of Michael M. Gless in Supp. of Mot. to Confirm Arbitration Award & in Opp'n to Mot. to Vacate Arbitration Award ("Gless Decl.") [Doc. #5], Ex. 1.) The arbitration procedure permitted the parties to select a panel of three arbitrators from a list of fifteen randomly selected possibilities. (Gless Decl. at ¶ 5.) The NASD appointed to the panel Eugene Nielson, Merrill Dean Taylor, and Douglas Edwards. (Id.)

During discovery, Balter moved to compel RBC to disclose Halverson's address and phone number. (Mot. to Vacate Arbitration Award, Ex. D; Errata, Exs. E, F, G, H, I, J.) The arbitration panel ordered RBC to disclose, among other things, Halverson's current address and phone number. (Errata, Ex. K at 1-2.) In response to the panel's order, RBC answered other disclosure requests, but again did not include Halverson's contact information. (Errata, Ex. M.) Balter moved for sanctions for RBC's refusal to comply with the discovery requests and the panel's order compelling RBC to disclose Halverson's contact information. (Balter Affirmation, Ex. W.) RBC ultimately provided the requested information. (Mot. to Vacate Arbitration Award, Ex. D at 5.) The arbitration panel "exercis[ed] its wide discretion as to address alleged noncompliance with its discovery orders," and declined to issue sanctions against RBC. (Balter Affirmation, Ex. AA.)

Balter also moved to amend her Statement of Claim to add as respondents Halverson, Hollander, and McDonough and to reduce her damages claim. (Mot. to Vacate Arbitration Award, Ex. Q.) The panel initially denied the motion, but later modified its ruling by granting Balter's request to alter the claimed damages. (Gless Decl., Ex. 2.) The panel specifically confined approval to amend, however, stating "[n]o new or additional claims may be added to what was alleged in the original Statement of Claim. The Amended Statement of Claim shall be, as requested by Claimant, limited to a reduction or a

1  simplification of the original claims." (Id.)

2  Balter then filed an Amended Statement of Claim that added new respondents
3  and lowered the damages claimed. (Mot. to Vacate Arbitration Award, Ex. P.) The panel
4  found Balter's Amended Statement of Claim did not comply with the panel's prior ruling
5  and denied the amendment in its entirety. (Gless Decl., Ex. 3.) The panel stated that
6  Balter's attempt to add new respondents "flies in the face of the clear and unambiguous
7  language of limitations" in the panel's prior order. (Id.) The panel therefore determined
8  that Balter's "blatant disregard" of the prior order's limitations was "sufficient grounds for
9  revoking the permission given . . . to file an Amended Statement of Claim." (Id.) The
10 panel revoked permission to amend and reserved ruling on RBC's motion for sanctions.
11 (Id.)

12 Balter again moved to amend the Statement of Claim. (Mot. to Vacate
13 Arbitration Award, Ex. L.) The panel denied Balter's motion, reiterating that Balter's
14 attempt to add respondents was an attempt to assert new or additional claims in direct
15 contravention of the panel's prior order. (Gless Decl., Ex. 4.) The panel therefore denied
16 Balter's second motion to amend, and ordered Balter to "cease and desist from any
17 additional effort to obtain permission from the panel to amend her statement of claim."
18 (Id.)

19 After Balter initiated the arbitration proceedings, Halverson allegedly called
20 Balter's friend, Pam Otis ("Otis"), who was going to be a witness at the arbitration
21 proceeding. (Errata, Ex. S at ¶¶ 4-6.) Otis has stated, by affidavit, that Halverson told her
22 he knew Otis was going to testify for Balter and that he was "'upset about what is going on
23 in the Balter arbitration.'" (Id. at ¶ 7.) Otis perceived Halverson's phone call as threatening
24 because of Halverson's tone of voice and her knowledge that Halverson had a temper. (Id.
25 at ¶¶ 5, 7-10.) Otis interpreted Halverson's call as a threat to herself and Balter, and Otis
26 thereafter called Balter and told her of the phone call. (Mot. to Vacate Arbitration Award,

5

Ex. A at 105-06.)

During the arbitration proceedings, Balter moved the panel to enjoin Halverson from making threats against her or Otis, to prohibit RBC from presenting a defense at the arbitration proceedings due to Halverson's conduct, and requesting the panel to advise the authorities as to Halverson's alleged threats for possible criminal prosecution. (Second Errata to Mem. of P.&A. in Supp. of Mot. to Vacate ("Second Errata") [Doc. #16], Ex. T.) Balter supported the motion with her own affidavit and with Otis' affidavit. (Id.) The panel rejected her requests, stating the motions were "lacking in merit." (Second Errata, Ex. U.) Balter then moved for the chairman to recuse himself for denying the motions. (Balter Affirmation, Ex. CC.) The Chairman responded by letter that he saw no basis to recuse himself, and that the panel denied the requested relief as to Halverson because "[d]enial of relief the Panel has no power to give is not a proper ground upon which to demand or base recusal." (Balter Affirmation, Ex. DD.) Balter again moved to remove the arbitrators for denying the relief, arguing the motion was not opposed factually and the chairman's explanation for denying the relief did not conform to the panel decision's explanation. (Mot. to Vacate Arbitration Award, Ex. N.)

At the arbitration hearing, Balter attempted to call Otis as a witness to appear by telephone. (Mot. to Vacate Arbitration Award, Ex. A at 142-45.) The arbitration panel denied the request, stating Otis' testimony "is too critical to take over the telephone. If she is going to testify in this proceeding she will have to testify here in person or not at all." (Id. at 143.) Balter explained to the panel that Otis was a critical witness who would not travel by air, and that generally telephonic testimony was permitted in the proceedings. (Id.) The panel chairman stated that was not the general practice, and referred Balter to the initial pre-hearing scheduling order which prohibited telephone testimony except when the

///

///

6

parties agree or upon a timely motion granted by the panel. (Id.; Gless Decl., Ex. 6.[1]) The scheduling order required a party seeking to introduce telephonic testimony to move for permission to do so by a certain date or the panel would deny the motion as untimely. (Gless Decl., Ex. 6.) The chairman noted that until Balter was about to introduce Otis' testimony, the panel had no notice that Otis was to appear by telephone. (Mot. to Vacate Arbitration Award, Ex. A at 144-45.) Otis did not testify at the proceedings. (Id. at 145.)

During Halverson's testimony, Balter attempted to undermine his credibility with evidence of prior convictions and alleged criminal conduct. (Mot. to Vacate Arbitration Award, Ex. B at 58-62.) The panel initially permitted this line of questioning which revealed Halverson had a criminal conviction for stealing beer when he was eighteen years old, and he had a dispute over an unpaid bill with his eye doctor. (Id. at 59.) Upon objection by RBC, the panel did not permit further questioning on a criminal record unless Balter could show it related to a felony and a crime of moral turpitude. (Id. at 59-61.) When Balter attempted to introduce a criminal complaint against Halverson, the panel refused to admit it because it did not lead to a conviction. (Id. at 61-62.)

At the conclusion of the arbitration proceedings when Balter's attorney was making his closing arguments, the panel chairman interrupted counsel and advised him he had been arguing for "more than an hour," and was "starting to repeat [him]self over and

---

[1] The Initial Prehearing Conference Scheduling Order states:
Should any party seek to present testimony from a witness other than by the witness personally appearing at the hearing, such as by telephone . . . the Panel hereby notifies the parties that such alternate form of testimony will not be permitted unless:
   a. All parties agree in writing to such alternate form of witness presentation, or
   b. Upon the filing of a Motion for an Order of the Panel permitting such alternate form of witness presentation, which the Panel grants.
Unless a Motion to permit such alternate form of witness presentation is filed by Wednesday, July 9, 2003, the Panel will regard it as untimely, and it will be denied on that ground.
(Gless Decl., Ex. 6 at 2 (emphasis in original).)

7

1  over again." (Mot. to Vacate Arbitration Award, Ex. B at 166.) The chairman stated he
2  would permit ten more minutes of argument. (Id.) Counsel requested an additional half
3  hour. (Id. at 166-67.) The chairman denied the request, ordered a five minute recess, and
4  granted ten minutes for Balter's attorney to conclude his remarks. (Id. at 167.) Just prior to
5  the end of the proceedings, the chairman asked both parties if they had received a full and
6  fair proceeding. (Id. at 171.) Balter's attorney stated, "I have except I would have liked a
7  longer period of time for my summation." (Id. at 172.)
8        The panel issued a decision finding RBC liable to Balter in the amount of
9  $62,500 in compensatory damages. (Mot. to Vacate Arbitration Award, Ex. V at 4.) The
10 panel concluded that although Balter suffered $125,000 in compensatory damages, Balter's
11 "negligent acts were also a contributing cause of her damages." (Id.) The panel found
12 RBC and Balter equally negligent, and thus reduced Balter's award by half. (Id.) The panel
13 denied any other requested relief, including punitive damages. (Id.)
14        In the award ruling, the panel addressed two of Balter's previous motions. (Id. at
15 2-4.) The panel noted that Balter had moved to amend her Statement of Claim to include
16 additional respondents, but the panel denied the claim because Balter could have named
17 Halverson as a respondent from the outset but chose not to do so. (Id. at 2.) The panel
18 noted that it later permitted Balter to amend her Statement of Claim, but limited amendment
19 only to reduce or simplify the original claims, and expressly denied amendment to add new
20 or additional claims. (Id. at 2-3.) The award stated that despite these limitations, Balter
21 filed an Amended Statement of Claim that included new respondents and claims. (Id. at 3.)
22 The panel noted that it found Balter's failure to comply with the prior ruling to be sufficient
23 grounds to deny amendment. (Id.) The panel noted that Balter again moved to amend her
24 Statement of Claim, and the panel again denied the request. (Id.)
25 ///
26 ///

In the award, the panel also reviewed Balter's prior motion to permit Otis to testify by phone. (Id. at 3-4.) The panel noted it denied the motion because the panel could not determine Otis' credibility unless she appeared in person and because Balter's motion was untimely under the pre-hearing scheduling order. (Id.)

Balter now moves to vacate the arbitration award. Balter contends the award was procured by fraud because the panel ruled against her motion to amend her claim, refused to permit counsel to complete his summation, and denied the motion for a protective order against Halverson. Balter also asserts the arbitrators demonstrated evident partiality based on these same rulings and by suggesting the panel was considering sanctions against Balter for moving to amend her Statement of Claim. Additionally, Balter claims the arbitrators engaged in misconduct and refused to consider material evidence when they denied the factually unopposed motion for a protective order, denied her motion to amend, denied her motion for sanctions against RBC for failing to disclose Halverson's contact information, refused to permit character evidence on Halverson, and refused to permit Otis to testify by phone. Further, Balter asserts the arbitrators exceeded the scope of their powers because the award failed to include certain information required by NASD procedural rules. Finally, Balter argues the arbitrators manifestly disregarded the law by making their decision without benefit of certain excluded evidence, by finding Balter contributorily negligent, and by refusing to grant the motion for a protective order against Halverson.

RBC responds that each action the arbitration panel took was supported by the facts and law. With respect to the denial of amendment, RBC notes the panel permitted amendment only under limited circumstances, but Balter did not comply with the panel's order on amendment denying her request to add new claims. With respect to character evidence on Halverson, RBC responds that Halverson appeared at the proceedings and testified regarding the allegations against him, including his alleged drug and alcohol problems and the allegation that he killed someone in a bar fight. As to the protective

order, RBC asserts the panel was not required to provide extra security for Balter, and Balter did not explain why she could not provide security herself or make her own complaint to any prosecuting authorities. As to the panel's decision not to permit Otis to testify telephonically, RBC asserts Balter failed to follow the pre-hearing scheduling order that required the parties to timely move for permission for telephonic testimony. RBC asserts the panel was within its discretion to limit counsel's closing argument where he had argued for over an hour and began to repeat facts. Finally, RBC asserts the panel's finding of contributory negligence is supported by the record because Balter failed to mitigate the decline in her account and was not reasonably diligent in monitoring her account. RBC also cross-moves for confirmation, asserting Balter stated at the close of the hearing she had a full and fair hearing except that counsel wanted more time for closing argument.

## II.         LEGAL STANDARD[2]

A court's review of an arbitration decision is "'limited and highly deferential.'" Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1132 (9th Cir. 2003) (quoting Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc., 84 F.3d 1186, 1190 (9th Cir. 1996)). A court may vacate an arbitration award only if the arbitrators' conduct violated the Federal Arbitration Act ("FAA"), or if the award is "'completely irrational'" or "'constitutes manifest disregard of the law.'" Id. at 1132-33 (quoting G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1105 (9th Cir. 2003)). A federal court may vacate an arbitration award under the FAA where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the

---

[2] This Court has diversity jurisdiction over this case because Plaintiff is a citizen of Nevada, Defendant is a citizen of Minnesota, and the amount in controversy is over $75,000. See 28 U.S.C. § 1332 (setting forth requirements for diversity jurisdiction); Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 664 (9th Cir. 2005) (holding the amount in controversy for a motion to confirm or vacate an arbitration award is the amount asserted in good faith in the complaint); Cross-Mot. to Confirm NASD Arbitration Award [Doc. #34] (setting forth the parties' citizenship).

arbitrators were guilty of misconduct in refusing to postpone the hearing or in refusing to hear pertinent and material evidence or engaged in any other misbehavior prejudicing a party's rights; or (4) the arbitrators exceeded their powers.  9 U.S.C. § 10.  Manifest disregard of the facts is not a basis for vacating an arbitration award.  Coutee, 336 F.3d at 1133.  However, in some circumstances, "legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." Id.

### A. Fraud

To vacate an arbitration award as procured by fraud, the party challenging the award must show the fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence."  Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1339 (9th Cir. 1986).

Balter has failed to establish the award was procured by fraud by clear and convincing evidence.  Balter's only argument regarding fraud is that the arbitrators ruled against her on various motions and cut short her counsel's closing argument.  Merely ruling against her on motions does not establish fraud by clear and convincing evidence.  Further, Balter has not established the rulings were erroneous, much less fraudulent.  With respect to Balter's motion to amend, the arbitration panel denied Balter's motion to add respondents because it concluded Balter could have named those individuals associated with her account at RBC in her initial Statement of Claim.  Balter does not explain why the arbitration panel was incorrect about this conclusion.  Further, the arbitration panel permitted Balter to make a limited amendment to her Statement of Claim.  Balter did not comply with the panel's limited order, adding claims despite the panel order's express denial of permission to do so. The panel's response denying amendment where the amendment failed to comply with the panel's prior decision is not fraudulent.

11

Likewise, the panel's decision to cut short Balter's counsel's summation at the hearing does not constitute fraud. The panel permitted counsel over an hour to argue and granted counsel an additional ten minutes to conclude. Counsel's desire to argue for an additional twenty minutes does not show the panel shortened summation to the extent that the award was procured fraudulently.

Finally, the panel's decision to deny the protective order does not show the award was procured by fraud. First, the failure to secure the protective order is not what prohibited Otis from testifying. Rather, Balter's counsel stated the reason Otis was to appear telephonically at the arbitration hearing was because she did not travel by air. (Mot. to Vacate Arbitration Award, Ex. A at 143.) Second, Balter has not explained why she could not make her own reports of alleged illegal activity to whatever authorities she felt needed to be notified. Even if the panel's decision was incorrect, Balter does not explain, much less show by clear and convincing evidence, how this decision amounts to procuring the award by fraud. The Court therefore will deny Balter's motion to vacate the arbitration award for fraud.

**B. Partiality**

An arbitrator can act with evident partiality either by nondisclosure or actual bias. Woods v. Saturn Dist. Corp., 78 F.3d 424, 427 (9th Cir. 1996). An arbitrator is evidently partial by means of nondisclosure "when facts that are not disclosed by an arbitrator create a 'reasonable impression of partiality.'" Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1312 (9th Cir. 2004) (quoting Schmitz v. Zilveti, 20 F.3d 1043, 1046 (9th Cir. 1994)). In a nondisclosure case, the party seeking vacatur need not show actual bias. Woods, 78 F.3d at 427. In an actual bias case, the party alleging evident partiality must establish "specific facts which indicate improper motives," and the reviewing court must find actual bias as opposed to an impression of partiality. Id.

///

Balter has presented no evidence the arbitrators failed to disclose facts creating a reasonable impression of partiality. Rather, Balter argues that given the arbitrators' various rulings against her, the Court should conclude the panel was actually biased. The specific facts upon which Balter relies are the panel's decisions on the rulings discussed above and the panel's indication that it may consider sanctions against Balter for moving to amend her Statement of Claim. As discussed above, Balter has not shown these rulings were erroneous. Further, the panel's "threat" to consider sanctions is not a specific fact showing bias where Balter's Amended Statement of Claim did not comply with the panel's prior order. An arbitration panel can consider sanctioning a party for failing to comply with its orders without being biased against that party. The panel ultimately did not order any sanctions against Balter, and found in favor of Balter on the underlying claim. The Court finds no specific facts supporting a finding of actual bias in this case, and the Court therefore will deny Balter's motion to vacate the arbitration award on the basis of evident partiality.

**C. Misconduct**

The FAA provides a court may vacate an award where the arbitrators are guilty of misconduct by refusing to postpone the hearing or refusing to hear pertinent and material evidence or engaged in any other misbehavior prejudicing a party's rights. 9 U.S.C. § 10. The Court concludes the panel did not engage in any misconduct.

With respect to Balter's argument that the panel declined to hear pertinent evidence, Balter has not shown the panel's decision to deny the protective order resulted in Otis not testifying. Rather, counsel indicated the reason Otis was to appear by phone was because she would not travel by air. (Mot. to Vacate Arbitration Award, Ex. A at 143.) Additionally, the panel did not permit Otis to appear telephonically because it concluded that because she was testifying about disputed facts, her credibility was important and could be judged properly only by live testimony. The panel noted Balter did not indicate Otis

would appear by telephone until moments before Otis was about to testify. The panel indicated this was a surprise to them, and did not comply with the pre-hearing scheduling order which required the parties to agree to telephone testimony or upon timely motion of a party. The panel therefore ruled it would not permit Otis to testify by phone. The panel did not refuse to hear material evidence, rather it refused to take that evidence by phone when it had not been apprised the testimony would be given telephonically as the prehearing scheduling order required and where it believed live testimony was important for this witness. Although Balter argues the panel permitted other witnesses to testify telephonically, Balter has not presented evidence that the panel did so absent the parties' agreement or a timely motion granting permission for telephonic testimony, or that the witnesses who testified telephonically were testifying about disputed factual matters where credibility would be important.

Balter also does not explain how the panel's denial of her motion to amend the Statement of Claim resulted in the panel refusing to hear pertinent and material evidence. Although not added as respondents, Halverson and McDonough both testified at the hearing. As discussed above, Balter has not established the panel's decision on this point was erroneous.

Further, the panel heard testimony about Halverson's criminal record and other matters affecting his credibility. (Mot. to Vacate Arbitration Award, Ex. B at 24-27, 56-70.) The panel heard testimony regarding Halverson's alleged drug and alcohol problems, the allegation that he killed someone in a bar fight, his criminal conviction for stealing beer when he was eighteen years old, complaints against him with regulatory authorities, civil complaints, and a criminal complaint against him regarding an unpaid doctor bill. (Mot. to Vacate Arbitration Award, Ex. B at 56-70.) Upon RBC's objection, the panel limited any further questioning of Halverson's criminal record to felonies or crimes involving moral turpitude. The panel sufficiently permitted Balter to question Halverson regarding issues

surrounding his criminal record and issues affecting his credibility.  Cf. Fed. R. Evid. 608 (limiting attacks on credibility to convictions punishable by over one year of imprisonment or crimes involving dishonesty or a false statement).  Balter has not identified what other credibility evidence regarding Halverson the panel did not admit that was pertinent or material.

Finally, the panel's decision not to sanction RBC for its failure to disclose Halverson's contact information does not constitute misconduct prejudicing Balter's rights. The panel noted RBC ultimately provided the disputed information.  The panel therefore decided, in its discretion, not to award sanctions.  A panel's discretionary decision not to award sanctions on a discovery dispute after the noncompliant party complies with the discovery order does not amount to misconduct, and is not a basis to overturn an arbitration award.  For these reasons, the Court will deny Balter's motion to vacate the arbitration award for misconduct.

### D.  Exceeding Authority

Balter briefly argues the panel exceeded its authority because its decision does not comply with NASD arbitration rules regarding the form and required content of an arbitration decision.  Balter concedes these alleged deficiencies are not sufficient on their own to justify vacating the award.  (Mem. of P&A in Supp. of Mot. to Vacate [Doc. #2] at 15.)  The Court therefore will deny Balter's motion to vacate on this basis.

### E.  Manifest Disregard of the Law

"'Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law.'"  Luong v. Circuit City Stores, Inc., 368 F.3d 1109, 1112 (9th Cir. 2004) (quoting Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir. 1995)).  "It must be clear from the record that the arbitrators recognized the applicable law and then ignored it."  Id. (quotation omitted).

Balter has failed to establish the arbitration panel recognized and ignored applicable law. Balter's assertion that the panel made its decision without benefit of material facts, particularly Otis' testimony, does not establish manifest disregard of the law. Generally, disregard of facts is not a basis to vacate an arbitration award. Further, whether Halverson threatened Otis was a disputed question of fact, and was not legally dispositive of the issues before the arbitration panel.

The panel's finding of contributory negligence also was not in disregard of the law. Balter testified she did not open or read any of the statements mailed to her. The panel did not disregard the law in finding that an investor who fails to apprise herself of her account information or to monitor her account's progress is contributorily negligent.

Finally, the panel's decision not to grant the protective order was not in manifest disregard of the law. Even accepting Otis' affidavit, the panel may have concluded the allegations did not support the extraordinary relief of a protective order, and the panel apparently questioned its power to give such relief. Balter has not shown the law grants a NASD arbitration panel such powers, or that a panel would be required to issue a protective order in these circumstances. Additionally, Balter requested not only a protective order against Halverson, but that the panel prohibit RBC from presenting a defense due to Halverson's conduct and for the panel to report Halverson to various authorities. The panel's denial of this requested relief is not in manifest disregard of the law. Balter has provided no authority that an arbitration panel must preclude a respondent from presenting a defense where a witness supposedly threatens the opposing party. Balter also has provided no authority that an arbitration panel must report to the authorities a witness's allegations regarding another witness's potential criminal misconduct.

In sum, Balter's arguments supporting her motion to vacate reflect her disagreement with the panel's decisions, but do not establish a basis to overturn the arbitration panel's decision, particularly given this Court's highly deferential standard of

review.  The Court therefore will deny Balter's motion to vacate the award.  Further, because the award is not subject to vacatur, the Court will grant RBC's motion to confirm the award under the FAA.  See 9 U.S.C. § 9.

**III.     CONCLUSION**

IT IS THEREFORE ORDERED that Petitioner Roberta Balter's Motion to Vacate Arbitration Award (Doc. #1) is hereby DENIED.

IT IS FURTHER ORDERED that Respondent RBC Dain Rauscher, Inc.'s Cross-Motion to Confirm NASD Arbitration Award (Doc. #4) is hereby GRANTED.  The NASD arbitration decision in the Matter of Arbitration Between Robert Balter, Claimant v. RBC Dain Rauscher Inc., Respondent is hereby CONFIRMED.

DATED:   April 28, 2006

_____
PHILIP M. PRO
Chief United States District Judge